**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| AXIS SURPLUS INSURANCE COMPANY )<br>and XL SPECIALTY INSURANCE COMPANY, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>DAVID A. JOHNSON, STEVEN R. BERLIN, )<br>TOM KIMBALL, TAMMIE MALONEY, )<br>JEFF SULLIVAN, DONALD L. McCORKELL, )<br>and JACK KNIGHT, )<br>)<br>Defendants. | Case No. 06-CV-500 -GKF-PJC |

**O P I N I O N  A N D  O R D E R**

This matter comes before the court on the Motion for Summary Judgment of Plaintiffs Axis Surplus Insurance Company and XL Specialty Insurance Company (Document No. 29); Plaintiffs' Motion to Strike Affidavits of Patrick J. Malloy, III and Richard M. Paul, III (Document No. 49); and Defendant Jeff Sullivan's Motion for Summary Judgment (Document No. 68). For the reasons set forth below, the Plaintiffs' Motion to Strike (Document No. 49) is denied; Plaintiffs' Motion for Summary Judgment (Document No. 29) is granted; and Defendant Sullivan's Motion for Summary Judgment (Document No. 68) is found to be moot.

**I. STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, a court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Wolf v. Prudential Insurance Co. of America*, 50 F.3d 793, 796

(10th Cir. 1995). The movant for summary judgment must meet the initial burden of showing the absence of a genuine issue of material fact, then the nonmovant bears the burden of pointing to specific facts in the record "showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Id*.

## II. INTRODUCTION

This is a declaratory judgment action by the carriers of two directors and officers liability insurance policies issued to Great Plains Airline Holding Co. ("Great Plains"). Axis issued the primary policy and XL issued the excess policy for the claims made period June 17, 2003 to June 17, 2004 (the "Policy Period"). On July 21, 2006, Patrick Malloy, trustee of Great Plains bankruptcy estate, filed suit against seven former directors of Great Plains, alleging the directors were liable to the estate for breach of fiduciary duty and gross negligence.

The directors put the insurers on notice of the lawsuit and the insurers denied coverage on the ground that the suit was not a claim that was first made or deemed first made during the Policy Period. Insurers assert the same position in their motion for summary judgment. Defendants contend that the claim is covered because it is relates back to a suit filed in federal court in Missouri on March 24, 2004, within the Policy Period.

## III. UNDISPUTED MATERIAL FACTS

The following material facts are undisputed:

### The Insurance Policies

1. Axis issued the Directors, Officers and Corporate Liability Insurance Policy No. ECN 598499-00 (the "Axis Policy") to Great Plains for the claims-made period June 17. 2003, to June 17, 2004. The maximum aggregate limit of liability under the Axis Policy was $2 million.

(Document No. 29, Plaintiffs' Motion for Summary Judgment, Statement of Undisputed Fact No. 1; Document No. 42, Defendants' Response to Plaintiffs' Motion for Summary Judgment, Response to Plaintiffs' Statement of Undisputed Fact No. 1.)

  2. The Axis Policy is a "claims made" policy which provides in pertinent part:

> The Insurer shall pay in connection with a Wrongful Act which takes place before or during the Policy Period:
>
>  A. all Loss on behalf of any Insured Individual which is not indemnified by the Policyholder arising from any Claim for a Wrongful Act first made against such Insured Individual,
>
>  B. all Loss on behalf of the Policyholder for which the Policyholder grants indemnification to any Insured Individual, as permitted or required by law, arising from any Claim for a Wrongful Act first made against such Insured Individual,
>
>    *  *  *
>
> during the Policy Period, Extended Reporting Period or Runoff Period, if applicable, and reported in writing to the Insurer as soon as practicable after any of the Polilcyholder's Executive Officers first becomes aware of such Claim, but in no event later than sixty (60) days after the expiration of the Policy Period, Extended Reporting Period or Runoff Period, if applicable.

(Document No. 29, Statement of Undisputed Fact No. 2, citing Axis Policy §1; Document No. 42, Response to Statement of Undisputed Fact No. 2).

  3. The Axis Policy was not extended; thus the Policy Period expired on June 17, 2004.

(*Id.*)

  4. The Axis Policy provides at §V.A:

> All Claims arising from the same Wrongful Act and all Interrelated Wrongful Acts shall be deemed one Claim, and such Claim shall be deemed to be first made on the earlier date that: (i) any of the Claims is first made against an Insured under this Policy or any prior policy,

>> or (ii) valid notice was given by the Insureds under this Policy or
> any prior policy of any Wrongful Act or any fact, circumstance, situation,
> event, transaction or cause which underlies such Claim.  Coverage under
> Policy shall apply only with respect to claims deemed to have been
> first made during the Policy Period and reported in writing to the
> Insurer in accordance with the terms herein.

(Document No. 29, Statement of Undisputed Fact No. 3; Document No. 42, Response to Statement of Undisputed Fact No. 3).

   5.  The Axis Policy, at §III.W. defines "Wrongful Act(s)" as:

>> any error, misstatement, misleading statement, act, omission, neglect,
>> or breach of duty actually or allegedly committed or attempted by...
>> any Insured Individual in their capacity as such.

(Document No. 29, Statement of Undisputed Fact No. 4; Document No. 42, Response to Statement of Undisputed Fact No. 4).

   6.  The Axis Policy, at §III.G., defines "Interrelated Wrongful Acts" as:

>> any and all Wrongful Acts that have as a common nexus any
>> fact, circumstance, situation, event, transaction, cause or series
>> of causally or logically connected facts, circumstances, situations,
>> events, transactions or causes.

(*Id.*)

   7.  XL issued Excess Policy No. ELU83237083 to Great Plains for the claims made period June 17, 2003, to June 17, 2004 (the "XL Excess Policy").  The maximum aggregate limit of liability under the XL Excess Policy was $3 million, applicable only after exhaustion of the $2 million limit of liability provided by the Axis Policy (Document No. 29, Statement of Undisputed Fact No. 5, No. 6; Document No. 42, Response to Statement of Undisputed Fact. No. 5, No 6).

   8.  The XL Excess Policy adopted the same terms and conditions as the Axis Policy,

except as otherwise provided by the XL Excess Policy, and provided in §1 that "...in no event will the coverage under this Policy be broader than the coverage under any Underlying Insurance." (*Id.*)

### The *Stricker* Action

9. On March 10, 2004, William E. Stricker, Pamela Hines Stricker, Ozark Management, Inc., and Allergy & Asthma Consultants (the "Stricker Plaintiffs") filed suit against Union Planters Bank, N.A. ("Union Planters") and Great Plains in *Stricker v. Union Planters Bank, N.A., et al.,* Case No. 04-CV-4046-NKL (W.D.Mo.) (The "*Stricker* Action"). The Stricker Plaintiffs filed an Amended Complaint adding 11 directors and officers of Great Plains on April 13, 2004. (Document No. 29, Statement of Undisputed Fact No. 7, No. 8; Document No. 42, Response to Statement of Undisputed Fact No. 7, No. 8).

10. The Stricker Plaintiffs alleged in the Overview of the Amended Complaint:

> This case arises out of the unlawful banking practices of defendant Union Planters Bank, N.A. and the failure of defendant Great Plains Airline Holding Co. and its board of directors to honor their contractual and fiduciary obligations to plaintiffs. At issue is payment of a promissory note payable to Union Planters in an amount exceeding $21 million that is now in default after being assumed by Great Plains. Due solely to the defendants' breach of contractual, statutory, and common law duties owed to the plaintiffs, Union Planters improperly seeks payment of this debt from the plaintiffs.

(Document No. 29, Exhibit 4 to Woodard Affidavit, ¶1).

11. The *Stricker* Amended Complaint alleges that in 1999, Dr. William E. Stricker formed Ozark Air for purpose of building a regional jet passenger airline based in Columbia, Missouri (*Id.* ¶22); that Union Planters agreed to lend Dr. Stricker $21.8 million to purchase two aircraft (the "Aircraft Loan") (*Id.* ¶ 24); that Union Planters required Dr. Stricker to be a maker

and his wife to be a co-signer of the Aircraft Loan, that all Stricker Plaintiffs guaranty the loan, and that Union Planters be given a first priority security interest in the aircraft.(*Id.* ¶¶25, 26, 29).

12.  The *Stricker* Amended Complaint alleges that on March 11, 2001, Great Plains, Ozark Air and Dr. Stricker entered into a Stock Purchase Agreement in which Great Plains acquired all but 100 shares of the stock from Dr. Stricker and other shareholders for a purchase price of $6,134,635, and assumption of all Ozark Air debt, including the Aircraft Loan.  (*Id.* ¶35).  Great Plains agreed to remove Dr. And Mrs. Stricker as guarantors of the Aircraft Loan within one year of acquisition or sooner, if Great Plains' net worth dropped below $7 million. (*Id.* ¶40). Great Plains is alleged to have assumed all the obligations of the Stricker Plaintiffs under the Union Planters' loan documents.  (*Id.* ¶37).  Union Planters refused to release the Stricker Plaintiffs from their liability under the Aircraft Loan.  (*Id.* ¶38).

13.  The *Stricker* Amended Complaint alleges that Union Planters sent Dr. And Mrs. Stricker a notice of default on the Aircraft Loan on March 7, 2003, whereupon he immediately demanded that Great Plains honor its obligation to remove them from the Aircraft Loan.  (*Id.* ¶¶45-46).  Further, the Stricker Amended Complaint alleges that without his knowledge, Union Planters and Great Plain negotiated and executed a modification of the Aircraft Loan, and subsequently forced the Strickers to sign the modification.  (*Id.* ¶¶47-49).

14.  The *Stricker* Amended Complaint alleges that Dr. Stricker resigned from the board of directors of Ozark Air in July 2003 because it became clear that Great Plains had no intention of taking the necessary steps to get him and his wife off the loan.  (*Id.* ¶50).

15.  The *Stricker* Amended Complaint alleges that in November 2003 and December 2003, Union Planters sent notices of default, the first to Dr. And Mrs. Stricker and the second to

the Strickers, Great Plains and Ozark Air, and on January 9, 2004, Union Planters made formal demand for repayment of the Aircraft Loan to the Strickers, Great Plains and Ozark Air. (*Id.* ¶51-53).

16. The Stricker Plaintiffs asserted claims of violations of the Equal Credit Opportunity Act and R.S. Mo. §408.550 against Union Planters, breach of contract against Great Plains and Union Planters, breach of fiduciary duty against Great Plains, breach of implied duty of good faith and fair dealing against Union Planters and Great Plains, course of dealing and conversion against Union Planters, declaratory judgment against Union Planters and Great Plains, and breach of fiduciary duty and gross negligence against the Great Plains directors. (*Id.* ¶¶55-111). All of the claims for relief are predicated upon the Aircraft Loans. (*Id.*)

17. On September 7, 2004, the district court in the *Stricker* case granted a motion to dismiss for failure to state a claim with respect to the plaintiffs' claims for breach of fiduciary duty and gross negligence against the individual defendants. (Document No. 29, Statement of Undisputed Fact No. 17 and Ex. 5 to Woodard Affidavit; Document No. 42, Response to Statement of Undisputed Fact No. 17). In doing so, the court held that the individual defendants did not owe the plaintiffs a fiduciary duty based on his status as a personal guarantor of the Aircraft Loan. (*Id.*).

18. On November 16, 2004, the district court in the *Stricker* case denied a motion for leave to file a second amended complaint to alleged purported duties owed by the individual defendants to plaintiffs "as creditors of Great Plains at a time when Great Plains was insolvent or on the verge of insolvency." (Document No. 39, Statement of Undisputed Fact No. 18, No. 19, and Exs. 6, 7 to Woodard Affidavit; Document No. 42, Response to Statement of Undisputed

7

Fact No. 18, 19). The court ruled that individual creditors of Great Plains, did not have standing to assert a breach of fiduciary duty claim against corporate directors. (*Id.* Ex. 7 at p 4).

19. On appeal the district court's ruling in *Stricker* was upheld by the Eight Circuit Court of Appeals. (Document No. 29, Statement of Undisputed Fact. No. 20 and Ex. 8 to Woodard Affidavit; Document No. 42, Response to Statement of Undisputed Fact. No. 20).

20. The individual defendants in the *Stricker* Action gave notice of the action to Axis and XL within the Policy Period, and the insurers denied coverage. (Document No. 42, Defendant's Statement of Additional Facts Nos. 10, 13-14; Document No. 48, Plaintiff's Reply Brief, Response to Defendants' Statement of Additional Facts Nos. 10, 13-14).

### The *Malloy* Action

21. On March 11, 2005, Patrick J. Malloy III was appointed Trustee for the consolidated Bankruptcy Estates of Great Plains and Ozark Airlines. (Document No. 29, Statement of Undisputed Fact No. 21; Document No. 42, Response to Statement of Undisputed Fact No. 21).

22. On September 15, 2005, the Trustee filed a Notice of Intent to Settle Disputed Matter, Motion for Order Authorizing Employment of Professional Persons and Notice of Opportunity for Hearing. Trustee sought the Bankruptcy Court's approval to settle Dr. Stricker's claim in bankruptcy court based upon Great Plains' failure to pay the loan and obtain Stricker's release from the guaranty on the Aircraft Loan. Pursuant to the Trustee's motion, the bankruptcy court entered an order stating that Dr. Stricker had agreed "to abandon litigating on his own behalf at this time and to cooperate with the Trustee in investigating and pursuing the estate's possible claims against the officers and directors." In exchange for this, Dr. Stricker, individually, was allowed "an administrative claim against the estate in the amount of 25 percent

of any net recovery obtained by the estate as a result of claims against officers and directors to the extent that such recovery is paid by the D&O insurer." (Document No. 29, Statement of Undisputed Fact No. 22 and Exs. 10 and 11 to Woodard Affidavit; Document No. 42, Response to Statement of Undisputed Fact No. 22).

23. The Trustee in his Motion stated that "the D&O policy at issue is a claims made policy and the time to provide notice of a claim on behalf of the estate expired prior to the appointment of the Trustee in this case–thus working with Stricker permits the estate to utilize the timely notice provided by Stricker." (*Id.* Ex.10 at p. 4).

24. On January 23, 2006, the Trustee filed an adversary complaint in bankruptcy court against eight former directors of Great Plains, alleging breach of fiduciary duties. (Document No. 29, Statement of Undisputed Fact. No. 26 and Ex. 12 to Woodard Affidavit; Document No. 42, Response to Statement of Undisputed Fact. No. 26). The adversary complaint was voluntarily dismissed on May 23, 2006. (*Id.*).

25. On July 21, 2006, the Trustee filed suit in Oklahoma state court against seven former Great Plains directors, in a case captioned *Malloy v. Johnson, et al,* Case No. CJ 2006-04533 (Tulsa County District Court, Ok). (Document No. 29, Statement of Undisputed Fact No. 27 and Ex. 13 to Woodard Affidavit, Document No. 42, Response to Statement of Undisputed Fact No. 27).

26. The *Malloy* petition contains extensive allegations concerning the history of Great Plains and the mismanagement of the business by the board of directors, including:

- That Great Plains was grossly undercaptialized from inception. (*Id.,* Ex. 13, ¶21)

- That after acquiring Ozark, Great Plains immediately began incurring large monthly

9

- losses because it was not profitable to operate only two jet aircraft as a regional carrier. (*Id.* ¶24)

- That although defendants attempted to obtain financing for the purchase of additional aircraft, they bungled these attempts. (*Id. ¶¶25-28).*

- That by the summer of 2002, Great Plains was losing more than $1 million per month, but defendants did not comprehend the extent of the company's cash burn rate at this time. (*Id.* ¶29).

- That defendants mishandled an effort to obtain a federal loan guarantee from the Air Transportation Stabilization Board (ATSB), and that on October 20, 2002, the ATSB denied Great Plains' loan guarantee application on the grounds it did not meet applicable standards. (*Id.* ¶¶31-34).

- That long before the ATSB denial of the loan guarantee application, defendants knew or should have known that no additional private equity capital could be raised to purchase the requisite aircraft and therefore should have taken steps to cease operations of Great Plains to "avoid the deepening insolvency of Great Plains..." (*Id.* ¶35*).*

- That when Ozark Air commenced a voluntary Chapter 11 proceeding on January 23, 2004, the defendants knew the company had no ability to reorganize its financial affairs and should have ceased operations and not pursued Chapter 11. (*Id.* ¶37).

- That in May 2003, Great Plains fired its Chief Executive Officer, Jack Knight, and replaced him with defendant David A. Johnson, who had no relevant background or experience in running an airline carrier. (*Id.* ¶38).

- That in 2003, defendants refused to cooperate with prospective purchasers, who as a

10

result, withdrew their offers and/or ceased negotiations.  (*Id.* ¶39).

- That Great Plains kept itself in business in 2003 in part by selling valuable assets, resulting in additional dissipation of corporate assets.  (*Id.* ¶42).

27.  The Trustee asserted claims of breach of fiduciary duty and gross negligence against the directors based upon the above allegations.  (*Id.* ¶¶45-51).

28. The Petition contains no mention of Stricker, the *Stricker* Action or the claims asserted by Stricker.  (*Id.*)

29.  Defendants gave notice of the *Malloy* Action to Axis and XL.  On August 28, 2006, Axis denied coverage for the claim on the basis that the suit was filed over two years after the expiration of the Policy period and did not trigger the single claim provision of the Axis Policy because it did not involve the same Wrongful Acts or Interrelated Wrongful Acts as the *Stricker* action.  (Document #29, Statement of Undisputed Fact No. 35 and Ex. 16 to Woodard Affidavit; Document #42, Response to Statement of Undisputed Fact No. 35).

30. XL adopted Axis' reservation of rights and denial of coverage by its letter of September 18, 2006.  (Document #29, Statement of Undisputed Fact No. 36 and Ex. 17 to Woodard Affidavit; Document #42, Response to Statement of Undisputed Fact No. 36).

## IV.  ANALYSIS

### A.  Plaintiffs' Motion to Strike

As an initial matter, the court has reviewed Plaintiffs' Motion to Strike the Affidavits of Patrick J. Malloy, III, and Richard M. Paul, III (Document No. 49). Plaintiffs argue the affidavits by the Trustee and by Paul, counsel for the Stricker Plaintiffs, are inadmissible under Fed.R.Civ.P. 56(e).  The court agrees that both affidavits contain certain conclusory statements,

self-serving characterizations and legal conclusions, but will consider the affidavits and accord them the weight it deems appropriate.

### B. Plaintiffs' Motion for Summary Judgment

The Axis Policy and XL Excess Policy are claims-made policies, as opposed to occurrence-based policies. The difference between the two has been explained as follows:

> In the "occurrence" policy, the peril insured is the "occurrence" itself. Once the occurrence takes place, coverage attaches even though the claim may not be made for some time thereafter. While in the "claims made" policy, it is the making of the claim which is the event and peril being insured, and subject to policy language, regardless of when the occurrence took place.

*Sigma Financial Corp. v. American Intern. Specialty Lines Ins. Co.,* 200 F.Supp2d 710, 716 (E.D. Mich. 2002). The court in *Sigma* also noted:

> The importance of notice to a "claims made" policy derives from the benefits achieved by both the insurer and the insured. The insurer is able to significantly decrease its exposure by limiting its liability to claims noticed in a fixed period of time. Thus, because notice during the policy period is a prerequisite for coverage, a claims made policy benefits the insurer by allowing it to "close its books" on a policy at its expiration date, restricting its liability to a finite period of time, thus permitting a level of predictability unattainable under standard occurrence policies...claims made policies minimize the span of time between the insured event and the expiration of the insurer's liability to make payment for the event, and thus allow the insurer's [*sic*] to "close the books" on a policy at its expiration date. In return for this limited exposure, the insured benefits from lower insurance premiums and retroactive coverage for wrongful acts which occur prior to the policy period.

*Id.* at 716-717. (citations omitted). It is undisputed that here, the *Malloy* action was filed well after the expiration of the Policy Period. Thus, for coverage to apply, the action must be found to arise from the same Wrongful Acts or Interrelated Wrongful Acts, as defined in the Axis Policy, as those asserted in the *Stricker* lawsuit. The Axis Policy defines Wrongful Acts as:

12

>> any error, misstatement, misleading statement, act, omission, neglect, or breach of duty actually or allegedly committed or attempted by... Any Insured Individual in their capacity as such.

It defines Interrelated Wrongful Acts as:

> any and all Wrongful Act that have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of causally or logically connected facts, circumstances, situations, events, transactions or causes.

Under Oklahoma law related to insurance contracts, the terms of the parties' contract, if unambiguous, clear and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intentions of the parties as it existed at the time of the contract. *American Cas. Co. of Reading, Pennsylvania v. Federal Deposit Ins. Corp.,* 958 F.2d 324, 326 (10th Cir. 1992), citing *Dodson v. St. Paul Ins. Co.,* 812 P.2d 372, 376 (Okla. 1991). Every insurance contract shall be construed according to the entirety of its terms and conditions. *Bituminous Cas. Corp. v. Cowen Constr., Inc.,* 55 P.3d 1030, 1033 (Okla. 2002). The parties are bound by the terms of their agreement and the court will not undertake to rewrite the same nor to make for either party a better contract than the one which was executed. *Id.*

Central to this dispute is whether the definition of "Interrelated Wrongful Acts" is clear and unambiguous and, if so, the meaning of the term. Many courts have held the same or similar definitions of "Interrelated Wrongful Acts" to be clear and unambiguous. *See Highwoods Properties v. Executive Risk,* 407 F.3d 917, 925 (8th Cir. 2005), *Seneca Ins. Co. v. Kemper Ins. Co.,* 2004 WL 1145830 (S.D.N.Y. 2004), *aff'd,* 133 Fed. Appx. 770 (2d Cir. 2005); *Zahler v. Twin City Fire Ins. Co.,* 2006 WL 846352, *5, *6 (S.D.N.Y. 2006).

In *National Union Insurance Company of Pittsburgh, Pa. v. Holmes & Graven, et al.,* the court acknowledged that the word "related" encompasses both logical and causal connections, but

cautioned:

> "...the word "related" does not encompass every conceivable logical relationship. A relationship between two claims might be so attenuated or unusual that an objectively reasonable insured could not have expected that they would be treated as a single claim under the policy.

23 F.Supp.2d 1057, 1070 (D.Minn. 1998). In the *National Union* case, the law firm Holmes & Graven served as general counsel for a housing authority. In 1990, the firm allegedly made an error in preparing a trust indenture for the housing authority. In 1994, the firm, on behalf of the housing authority, commenced a declaratory judgment action in state court to determine the respective rights and obligations of the housing authority and the trustee for the bonds issued in the 1990 transaction. The trial attorney for the firm was alleged to have mishandled the case. The court ruled that the two claims were not sufficiently "related" to constitute a single claim. *Id.* In *St. Paul Fire & Marine Ins. Co. v. Chong,* 787 F.Supp. 183, 188 (D.Kan. 1992), the court found that three malpractice claims arising from an attorney's multiple representation of three clients in a criminal trial were unrelated because the attorney owed a separate duty to each client. Similarly, in *Scott v. American Nat. Fire Ins. Co., Inc.,* 216 F.Supp.2d 689, 694 (N.D. Ohio 2002), the court found that malpractice claims against an attorney by three separate clients were not related, even though they arose from the attorney's representation of all three in the formation of a company, because the attorney owed separate duties to each, and the alleged breach of those duties gave rise to distinct harms.

Here, the court believes the "Interrelated Wrongful Acts" definition is clear and unambiguous, and further that the claims in the *Stricker* Action and *Malloy* Action do not "have as a common nexus any fact, circumstance, situation, event, transaction, cause or series of

causally or logically connected facts, circumstances, situations, events, transactions or causes."

The Stricker Plaintiffs alleged in their Overview of the Amended Complaint that the case that the issue in the case was "payment of a promissory note payable to Union Planters in an amount exceeding $21 million that is now in default." (*See* Undisputed Material Fact No. 10 above).   The claims in *Stricker* were made by plaintiffs in their capacity as guarantors of the Aircraft Loan and creditors of Great Plains.  The Stricker Plaintiffs' claims focused wholly on the Aircraft Loan, Great Plains' and its directors' breach of the agreement to relieve the Stricker Plaintiffs of their guarantee obligations and Union Planters' attempt to enforce the Stricker Plaintiffs' personal guarantees of the Aircraft Loan.  Although claims of breach of fiduciary duty and gross negligence were made against the individual directors and officers, the claims were solely related to Great Plains' failure to pay off the Aircraft Loans.

In contrast, the *Malloy* petition alleges the Great Plains directors breached their fiduciary duty to the company from its inception up through the filing of Chapter 11 bankruptcy.  The directors are alleged to have grossly undercapitalized the company, mishandled efforts to obtain financing for the purchase of additional aircraft, botched an effort to obtain a federal loan guarantee from ATSB, replaced the president with a director who was not competent to serve as an airline CEO, kept the company in business too long, and filed for Chapter 11 instead of Chapter 7 bankruptcy.  There is no mention of any Stricker Plaintiffs, the *Stricker* Action, or the dispute concerning the Aircraft Loan

Defendants nevertheless assert the actions involve Interrelated Wrongful Acts because the Stricker Plaintiffs and the Trustee both asserted claims for breach of fiduciary duty and gross negligence.  In fact, Defendants contend the *Stricker* Amended Complaint and the *Malloy* Petition

15

"concern the very same claim." (Document No. 42 at p. 21).

The court finds this argument unpersuasive. As previously noted, the *Stricker* claims were related solely to the factual allegations concerning the Aircraft Loan, while the *Malloy* claims are based on sweeping allegations of mismanagement of Great Plains through its lifetime. The mere fact that both allege breaches of fiduciary duty and gross negligence do not provide the "common nexus" required by the policy's definition of Interrelated Wrongful Acts.

Defendants also argue the claims asserted in the *Stricker* Action are subsumed within the *Malloy* Action because the Trustee's claim is brought for benefit of all creditors. However, the court does not find this to be true. The *Malloy* Petition is brought on behalf of the debtors' estates under 11 U.S.C. §541. That statute provides that the estate is comprised of all legal or equitable interests of the debtor in property. 11 U.S.C. §541(a). While the Trustee's claim could indirectly benefit creditors, the estate does not actually include claims of creditors. Nor is there any evidence any creditors' claims have been assigned to the Trustee.

The sweeping interpretation urged by Defendants stretches the meaning of Interrelated Wrongful Acts past the breaking point. If their logic were to prevail, then any prior lawsuit with *any* claim against a director that contained the words "breach of fiduciary duty" or "gross negligence" would suffice as a basis for relation-back of the Trustee's claim. This interpretation abrogates the intent of a claims-made policy, to limit the liability of the insurer to a finite period of time. The relationship between *Malloy* and *Stricker* is so attenuated that the court does not believe an objectively reasonable insured could have expected the two to be treated as a single related claim. *National Union Insurance Company of Pittsburgh, Pa. V. Holmes & Graven, supra.*

The court finds that the *Malloy* claim does not involve Wrongful Acts or Interrelated Wrongful Acts so as to trigger relation back to the notice given in *Stricker*. The *Malloy* claim was made outside the Policy Period. Therefore, the policies do not provide insurance coverage for the *Malloy* action.

## V.  CONCLUSION

For the reasons set forth above, the Plaintiffs' Motion for Summary Judgment (Document No. 29) is granted.

The Motion for Summary Judgment of Defendant Jeff Sullivan (Document No. 68) appears to be mooted by the granting of summary judgment in favor of plaintiffs. The court does not, herein, make any determination concerning the issue of whether Sullivan is now or was ever a director of Great Plains.

As earlier noted, Plaintiffs' Motion to Strike (Document No. 49) is denied.

IT IS SO ORDERED.

DATED this 3rd day of October, 2008.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma